IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TINA MARIE GLOBIS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ANDREW M. SAUL, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Civil No. 19-1440 |

ORDER

AND NOW, this 31st day of March, 2021, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 17), filed in the above-captioned matter on August 7, 2020,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 15), filed in the above-captioned matter on July 7, 2020,

IT IS HEREBY ORDERED that the Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks remand to the Commissioner of Social Security ("Commissioner"), as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g).

**I.      Background**

Tina Marie Globis ("Plaintiff") protectively filed an application for supplemental security income, pursuant to Title XVI of the Social Security Act, on August 24, 2017. (R. 12). She claimed disability due to the following medical conditions: degenerative disc disease, severe arthritis in both knees, bipolar disorder, depression, panic attacks, severe anxiety, suicide

1

attempts, and requiring a knee replacement. (R. 226). After her application was initially denied, she requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing took place on March 20, 2019. (R. 31, 120). In her May 9th, 2019 decision, the ALJ determined Plaintiff was not disabled, and the Appeals Council declined review. (R. 1, 24). Plaintiff timely filed an appeal before the Court challenging the Commissioner's final decision, and the parties have filed cross-motions for summary judgment. (Doc. Nos. 15—19).

## II. Standard of Review

District courts are empowered to review "any final decision of the Commissioner of Social Security," 42 U.S.C. § 405(g), "on the record that was made before the ALJ." *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001). The courts review the Commissioner's findings of fact to ensure they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Judicial review . . . is plenary as to all legal issues." *Biller v. Acting Comm'r of Soc. Sec.*, 962 F. Supp. 2d 761, 776 (W.D. Pa. 2013); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). "[T]he substantial evidence standard is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." *Schaudeck*, 181 F.3d at 431.

Supplemental security income claimants must demonstrate disability, defined "as the inability 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.'" *De Rohn v. Barnhart*, 98 F. App'x 137, 138–39 (3d Cir. 2004) (citing 42 U.S.C. § 1382c(a)(3)(A)). Disability is determined according to the five-step "sequential evaluation process" established by

the Social Security Administration. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999) (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920. Step one entails "determin[ing] whether the claimant is currently engaging in substantial gainful activity." *Id.* Engagement in substantial gainful activity is automatically disqualifying. *Id.* At step two, "the Commissioner must determine whether the claimant is suffering from a severe impairment." *Id.* At least one severe impairment must be demonstrated at step two to move to step three. *Auriemma v. Colvin*, No. CIV.A. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) (explaining that "any single impairment" that meets the "severity threshold required at step two" leads to step three). Next, at step three, the claimant's medical impairments are compared against "a list of impairments presumed severe enough to preclude any gainful work." *Plummer*, 186 F.3d at 428. A match at step three ends the inquiry in favor of the claimant, but, if the claimant is found not to "suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five." *Id.* At step four, the ALJ considers whether the claimant's residual functioning capacity (RFC) permits her to return to past relevant work. *Id.* If the claimant demonstrates she cannot return to past relevant work, the evaluation proceeds to step five, where "the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability." *Id.* Deciding whether other work is available to the claimant, the ALJ "must analyze the cumulative effect of all the claimant's impairments." *Id.*

    **III.**    **ALJ's Decision**

In this matter, the ALJ went through the five-step sequential evaluation and determined: (1) Plaintiff had not engaged in substantial gainful activity since August 24, 2017, the application date (R. 14); (2) Plaintiff suffered from eight severe impairments (degenerative and discogenic disorders of the lumbar spine, degenerative joint disease of the left knee (status post total left

knee replacement), obesity (status post gastric bypass surgery), depression, bipolar, generalized anxiety disorder, PTSD, and substance use disorders (cocaine, cannabis, and alcohol abuse)) (R. 14); and (3) neither Plaintiff's impairments nor a combination thereof met or medically equaled a listed impairment. (R. 15). Because she found Plaintiff did not suffer from a listed impairment, the ALJ moved on to determine Plaintiff's RFC.

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's representations that she was assisted in daily activities (personal care, housework, pet care, etc.) by her fiancé. (R. 19). The ALJ noted Plaintiff's testimony that she: drove only once a month; struggled with cocaine and cannabis use, but not alcohol abuse; could not fully bend her left knee, which had been replaced; experienced back pain and associated leg numbness; used assistive devices (a walker and a cane); needed to lie down two to three times a day, for twenty to thirty minutes at a time; experienced hand numbness daily; used an inhaler; used a shower chair to bathe; suffered from panic attacks and suicide attempts; and that, if she worked, she would likely need five to eight days off every month due to her symptoms. (R. 19).

Next, the ALJ considered the objective evidence concerning Plaintiff's physical and mental health history, as well as evidence of Plaintiff's daily activities. The ALJ found the evidence confirmed Plaintiff's knee and back problems, though not the "severity and intensity" of her claimed symptoms. (R. 20—21). The ALJ noted the June 2018 consultative examination of Dr. Rabinovich, who opined that Plaintiff was capable of medium exertional work. (R. 21). The ALJ further considered the State agency physician's opinion that Plaintiff could perform light work, with no more than four hours of walking and standing in a workday. (R. 21). The ALJ ultimately found the State agency physician's opinion, which had the effect of limiting Plaintiff to sedentary work, more persuasive than that of Dr. Rabinovich in the matter of "the

combination of the claimant's musculoskeletal impairments and obesity."  (R. 21).  The ALJ then added to her consideration of Plaintiff's disability the psychological consultative examination of Dr. Newman who found Plaintiff would only be limited in her ability to concentrate because of her medications.  (R. 21).  The impressions of State agency psychologist Dr. Roberts and Dr. Aslo of the Human Services Center were generally consistent with Dr. Newman's findings, and indicated to the ALJ that Plaintiff would be capable of unskilled work, without "consistent rapid or production pace and few workplace changes."  (R. 22).

      The ALJ's consideration of Plaintiff's daily activities served to confirm her impression that Plaintiff's medical impairments were not negatively affecting her to the extent Plaintiff alleged.  The ALJ observed that Plaintiff had been involved with lifting heavy objects like furniture, contradicting testimony that she could not lift more than ten pounds.  (R. 20 (citing Ex. B22F at R. 1175)).  The ALJ also found Plaintiff's testimony concerning use of assistive devices, such as a cane or walker, undermined by the absence of any determination in the record that an assistive device would be medically necessary.  (R. 20).  The ALJ credited notations in Plaintiff's medical records over Plaintiff's testimony concerning the existence of an alcohol use disorder, and she found the absence of confirmation of three post-2016 suicide attempts in Plaintiff's medical records undermined the number of attempts Plaintiff claimed.  (R. 20, 22).  Additionally, the ALJ indicated that Plaintiff's testimony concerning the amount of time she needed to lay down in a day was incompatible with indicia in the record that Plaintiff "cares for her [disabled] teenage son."  (R. 20).

      In consideration of the evidence, the ALJ fixed Plaintiff's RFC at the sedentary level, and further specified that "she must never climb ladders, ropes, or scaffolds and must never kneel or crawl."  (R. 18).  The ALJ also limited Plaintiff to "*occasional* climbing of ramps and stairs and

*occasional* crouching," and further determined Plaintiff "must avoid even modest exposure to workplace hazards, such as unprotected heights or open moving machinery; she is limited to simple tasks, instructions, and decisions, commensurate with Dictionary of Occupational Titles Specific Vocational Preparation levels of 1 to 2; she is unable to perform consistent rapid or production rate pace; and she is limited to few changes in work processes or locations." (R. 18).

IV. **Legal Analysis**

Before the Court, Plaintiff has challenged the ALJ's non-disability determination. Plaintiff primarily argues that the ALJ failed to consider evidence in the record concerning Plaintiff's bilateral hand problems. (Doc. No. 16, pg. 12). Plaintiff asserts that the ALJ erroneously failed to include her bilateral hand problems among her severe impairments at step two, and further failed to include that impairment in the formulation of her RFC. Plaintiff also challenges the ALJ's construction of hypotheticals that were presented to the vocational expert, arguing that the hypotheticals did not account for all limitations. Finally, Plaintiff argues the ALJ arrived at three incorrect findings of fact, specifically that the ALJ erred in finding (1) Plaintiff has an alcohol use disorder, (2) Plaintiff cares for her son in a way that undermines her stated limitations, and (3) Plaintiff overrepresented the number of times she had attempted suicide since 2016. Having considered those arguments, and Defendant's response, the Court will remand the matter to the ALJ for further consideration.

As stated above, Plaintiff's first argument is that the ALJ erroneously failed to include her bilateral hand problems, *i.e.*, hand numbness, among Plaintiff's severe impairments at step two. At step two, claimants must demonstrate the presence of a "medically severe impairment or combination of impairments." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 144 (3d Cir. 2007). It is the claimant who must show an impairment is severe, that is, "significantly limits the

claimant's physical or mental ability to do 'basic work activities,'" *id.* (citing 20 C.F.R. § 404.1521(b)), however, it is not a heavy burden. *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) ("The step-two inquiry is a *de minimis* screening device to dispose of groundless claims."). Further, an ALJ's finding of any sufficiently severe impairment at step two leads to step three. *Auriemma*, 2015 WL 5097902, at *6 (citing *Salles*, 229 F. App'x at 145). Because a showing of any severe impairment at step two moves the claimant forward to step three, an ALJ who errs by not finding a specific severe impairment at step two does no harm. *Id.* Thus, in this matter, Plaintiff's complaint that the ALJ did not find her bilateral hand problems to be a severe impairment is easily resolved—the ALJ decided step two in Plaintiff's favor because of eight other severe impairments, therefore any failure to include a ninth severe impairment would not itself require remand.[1]

More compelling is Plaintiff's argument that regardless of whether the ALJ should have found her bilateral hand problems constituted a severe impairment, the ALJ was required to consider all the evidence concerning her bilateral hand problems—severe or not—in formulating Plaintiff's RFC. (Doc. No. 15). When an ALJ formulates the RFC, the goal is to determine what exactly "an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli*, 247 F.3d at 40 (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir.2000)). The ALJ "must consider all relevant evidence" including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Id.* at 41. All "medically determinable impairments of which [the ALJ is] aware" must be considered when the

---

[1] Plaintiff herself acknowledges that any failure to find her bilateral hand problem constituted a severe impairment at step two—on its own—would be, at most, a harmless error. (Doc. No. 16, pg. 15) (citing *Hile v. Saul*, No. CV 19-271, 2020 WL 1929229, at *2 (W.D. Pa. Apr. 21, 2020)).

ALJ assesses RFC, not just the impairments the ALJ found severe at step two. 20 C.F.R. § 416.945(a)(2); Soc. Sec. Ruling 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

In this matter, the ALJ did not consider all the evidence in the record concerning possible limitations of Plaintiff's hand function. The ALJ was aware of Plaintiff's allegation of hand numbness and functional limitations related thereto. (R. 15, 19, 63, 65, 250).[2] Considering Plaintiff's complaint, the ALJ appeared to review the evidence, and from her review found that "no medical source of record has recorded symptoms attributable to any bilateral hand dysfunction or upper extremity dexterity deficits." (R. 15).[3] Owing to an apparent lack of medical evidence, the ALJ determined Plaintiff's alleged hand impairments were unsupported by the record. (R. 15, 20). However, in her analysis, the ALJ overlooked Exhibit B26F, which contains the results of an April 19, 2019 EMG/NCV (electromyography and nerve conduction velocity) test, wherein Dr. Sandeep Rana found "evidence of bilateral median mono neuropathies at or distal to the wrist," that is, "Carpal tunnel syndrome." (R. 1508). Dr. Rana determined that there was "mild severity" on both sides, "with right being slightly worse than left." (R. 1508).

---

[2] **Claimant's testimony at R. 63:**
   Q: "How often do your hands get numb? Is that every day?"
   A: "Yeah. They get real tingly, and it's like . . . pins are sticking you.")
   **Claimant's testimony at R. 65:**
   Q: "So if you tried to color, how long could you color before your hands would go numb?"
   A: "Maybe five, ten [minutes], if that."

[3] The ALJ further noted that the results of Dr. Rabinovich's consultative examination seemed to indicate perfectly acceptable hand function: "during Dr Rabinovich's consultative examination, the claimant demonstrated intact handle/finger dexterity and a normal grip strength." (R. 15 (citing Ex. B12F at R. 805)).

The ALJ's decision does not make any mention of Dr. Rana's findings though they constitute medical evidence corresponding to Plaintiff's complaints of hand numbness. In fact, Exhibit B26F is not even included on the "LIST OF EXHIBITS" at the end of the ALJ's decision. (R. 29) (listing Exhibits B1F—B25F). While this caused the Court to question whether Exhibit B26F was part of the record before the ALJ, the Court has not identified any other basis for believing Plaintiff failed to establish the exhibit as part of the administrative record. Further, Defendant has not defended the ALJ's decision on the basis that Exhibit B26F was not part of the record before her. *See* (Doc. No. 18, pgs. 11, 13—14 (arguing Dr. Rana's test results revealed only mild abnormalities and thus should be interpreted as supporting the ALJ's decision)). This Court may not correct an ALJ's "failure to consider all of the relevant and probative evidence . . . by relying on medical records found in its own independent analysis." *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001). Thus, because Exhibit B26F was part of the record before the ALJ, it was error for the ALJ not to acknowledge it. *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981) ("The ALJ's failure to explain his implicit rejection of this evidence or even to acknowledge its presence was error."). Owing to this error, the Court will remand this matter for further consideration as informed by the medical evidence of bilateral median mono neuropathies of mild severity at Exhibit B26F.

Plaintiff also challenged the ALJ's non-disability determination on the bases that: the ALJ failed to include laying-down/off-task time and Plaintiff's alleged number of likely absences in the hypothetical questions she posed to the vocational expert; and the ALJ erred in finding that Plaintiff (1) has an alcohol use disorder, (2) cares for her disabled teenage son in a manner that undermines her disability claim, and (3) overrepresented the number of times she had attempted suicide since 2016. Regarding the alleged errors of fact, Plaintiff has clarified that her primary

concern is the impact of those errors upon her credibility before the ALJ. (Doc. No. 19, pgs. 20—25). Because the ALJ's error in formulating Plaintiff's RFC requires remand, the Court only briefly addresses Plaintiff's secondary arguments insofar as addressing those arguments may benefit the remand.

As to whether the ALJ failed to adequately represent how much laying-down time, off-duty time, and monthly absences Plaintiff would require, the Court notes that hypothetical questions posed to a vocational expert need only account for impairments to the extent they are "medically established," rather than to the extent that they are "*alleged* by a claimant." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Remand in this matter encompasses further consideration of Plaintiff's impairments and the extent to which they are medically established. If the ALJ, in her discretion determines further testimony of the vocational expert is necessary, the ALJ is directed to reflect all medically established impairments in the hypothetical questions she poses to the vocational expert.

The Court next addresses Plaintiff's arguments concerning alleged factual errors. The first alleged fact error is the ALJ's finding that Plaintiff had an alcohol use disorder despite Plaintiff's contrary testimony. (R. 14, 17, 20). The ALJ's finding that Plaintiff had an alcohol use disorder was based primarily on a December 2016 hospitalization record noting such a disorder (R. 20 (citing Ex. B19F at R. 1127)). Other evidence in the record points to the possibility that Plaintiff has abused various substances, but not alcohol. *See e.g.*, (R. 622, 1136). Plaintiff's second alleged error is the ALJ's finding that Plaintiff is involved in her son's care to an extent that undermines her alleged physical and mental limitations. The ALJ found that Plaintiff "cares for her disabled teenage son," which, among other things, led the ALJ to determine that Plaintiff had the "capacity to ambulate and perform both fine and gross motor

movements effectively." (R. 16, 20 ("Reclining several times a day, every day, is incompatible with raising a disabled teenager.")).  However, the ALJ did not indicate reliance on evidence in the record that would tend to show Plaintiff's care for her son entailed any specific physical demands.  Plaintiff's third alleged error is that the ALJ found she overrepresented her number of suicide attempts since 2016. (R. 22).  Suicidal ideation and attempts are found in the record, though not three discrete instances of attempts requiring medical treatment.  *See* (R. 802, 1127).

Considering these purported errors of fact, Court is not in a position to "reweigh" the evidence before the ALJ.  *Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990).  However, conflicts in and among evidence must be resolved, *Burnett*, 220 F.3d at 126, and inferences from the evidence must themselves be supported by substantial evidence.  *Schaudeck*, 181 F.3d at 431.  In this instance, the Court would be better positioned for a meaningful review of the ALJ's decision had the ALJ more explicitly resolved conflicting evidence concerning Plaintiff's use of alcohol.  It is also unclear what evidence in the record supported the ALJ's inference that Plaintiff's care of her teenage son entailed any specific physical demands.  Further, the ALJ's finding concerning the frequency of Plaintiff's suicide attempts is potentially contradicted by Dr. Rabinovich's notation of an attempt two months prior to the June 2018 consultative exam.  (R. 802).  It is unclear whether and to what extent the ALJ considered Dr. Rabinovich's consultative exam in finding Plaintiff overrepresented the number of times she attempted suicide.  Remand provides an opportunity for the ALJ to elaborate as to how she considered this evidence, resolved conflicts of evidence, and drew inferences from the evidence.[4]

---

[4] Defendant notes that, to the extent the ALJ may have erred in finding Plaintiff had an alcohol use disorder or had not attempted suicide three times since 2016, it is unclear whether such errors would have caused any harm.  (Doc. No. 18, pgs. 16, 17).  Because remand is required to address all the evidence related to Plaintiff's complaints of hand numbness, the Court need not resolve the question of whether these alleged errors of fact were ultimately harmful or harmless.  The

V.	**Conclusion**

Further consideration of the evidence in this matter is necessary, primarily due to the ALJ's oversight of objective medical evidence related to Plaintiff's complaints of hand numbness. Accordingly, the Court remands this matter for further proceedings consistent with this Order.

s/ Alan N. Bloch
United States District Judge

ecf:	Counsel of record

---

Court only underscores the importance of resolving conflicts in evidence and supporting inferences from facts with substantial evidence. *Schaudeck*, 181 F.3d at 431.